**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **BRENDA J. CARLSON** | § | |
| **THOMAS R. GANDY** | § | |
| | § | |
| **V.** | § | **A-10-CA-130-LY** |
| | § | |
| **THE CITY OF AUSTIN POLICE DEPT.** | § | |
| **and SHAWN LAPUSZYNSKI** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are two motions in the above-referenced case:

(1)    Defendants' Rule 12(b)(6) Motion to Dismiss (Clerk's Doc. No. 21), and all
of the associated responses, replies, and supplements;[1] and

(2)    Plaintiffs' Motion for Joinder of Additional Defendant (Clerk's Doc. No. 24),
and associated responses and supplements.[2]

On August 16, 2010, the District Court referred all pending and future motions to the undersigned

Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule

of Civil Procedure 72, and Rule 1(c) of Appendix C of the Local Rules of the United States District

Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States

Magistrate Judges.  After reviewing the parties' briefs, relevant case law, as well as the entire case

file, the undersigned submits the following Report and Recommendation to the District Court.

**I.    Background**

In this suit Brenda Carlson and Thomas Gandy complain of their alleged wrongful arrest and

prosecution for elder abuse.  The Plaintiffs claim that the arrest violated their Fourth Amendment

---

[1]Clerk's Doc. Nos. 22, 32, 33, 36, and 38.

[2]Clerk's Doc. Nos. 25, 31, and 37.

right against unreasonable seizure, as they claim the arrest was made without probable cause. They

also allege that the Defendants violated the Fourteenth Amendment's Equal Protection Clause. Both

of these constitutional claims are brought under 42 U.S.C. § 1983. Plaintiffs' original pleadings also

included state law claims, but the Plaintiffs have since stated their desire to withdraw those claims.

*See* Plaintiffs' Supplemental Response to Defendants' Rule 12(b)(6) Motion to Dismiss (Clerk's

Doc. No. 33) at 2.

On July 30, 2010, the City of Austin and Det. Lapuszynski filed a brief motion to dismiss,

alleging that Plaintiffs had failed to state a claim. After referral of that motion to the undersigned,

the Court entered an order on August 26, 2010, directing supplemental briefing on the motion to

dismiss, as the original motion had not been adequately briefed. The Defendants filed their

supplemental motion and brief on September 27, 2010, and additional responses and replies were

received on October 1, 2010, October 7, 2010, and October 17, 2010. In a separate motion, the

Plaintiffs seek leave to join Travis County and the prosecutor on the underlying elder abuse case,

Assistant County Attorney Ann Marie Sheeley. The Court will address these motions in turn.

## II.      Motion to Dismiss

The Defendants contend that the Plaintiffs have failed to state a claim and seek the dismissal

of the case. They argue that the Plaintiffs have failed to plead sufficient facts to demonstrate liability

of the City for the actions of its employees, and thus dismissal is warranted pursuant to *Monell v.*

*Dep't of Soc. Servs. of New York*, 436 U.S. 658 (1978) and its progeny.[3] The Defendants argue

---

[3]Plaintiffs' Complaint identifies the municipal defendant as the "City of Austin Police Department." In their response, the Plaintiffs indicate that they are intending to sue the City of Austin, and the City of Austin is the proper defendant, given that the Austin Police Department is not a separate legal entity capable of being sued. Accordingly, the Clerk is ORDERED to change the name of the city defendant in this case from the City of Austin Police Department to the City of

further that the Plaintiffs have failed to plead facts avoiding Det. Lapuszynski's qualified immunity and that they have failed to plead that any facts presented to the magistrate who issued the arrest warrant were materially false or misleading, and thus they have failed to adequately plead that the detective's acts caused their injury.[4]

### A.      Standard of Review

The Plaintiffs are proceeding pro se in this case.  Thus, in considering the 12(b)(6) motion, the Court must construe the Plaintiffs' allegations liberally.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Further, on all Rule 12(b)(6) motions, the court is to take all of the well-pleaded facts in the complaint as true, viewing them in the light most favorable to the plaintiff.  *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004).  For years, the long-standing rule had been that a court may not dismiss a case under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957).  In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court articulated the standard differently, stating instead that the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," and that "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  550 U.S. at 570, 555.  Subsequently, the Supreme Court has clarified that this new standard applies to all cases, not just to

---

Austin, and the Court will review the motions with the assumption that the City of Austin is a defendant.

[4]The motion also addresses the state law claims, but because the Plaintiffs have stated their intent to withdraw those claims, the Court will address not that portion of the motion.

antitrust cases such as *Twombly*. *Ashcroft v. Iqbal*, ---U.S. ----, 129 S. Ct. 1937, 1953, 173 L.Ed.2d 868 (2009).

### B.    The Plaintiffs' Allegations

As noted earlier, the Plaintiffs have filed several supplemental briefs on the motion to dismiss. Each of these briefs contain factual allegations, many of which go into far more detail than the Complaint. Given the Plaintiffs' pro se status, and given that this is a motion to dismiss, the Court will consider *all* of the factual allegations, whether made in the Complaint or in the additional briefing, as part of the Plaintiffs' complaint, and will treat any of these allegations that are "well-pleaded" to be true for purposes of the motion to dismiss. Taking all of these facts together leads to the following factual narrative.

The events giving rise to the arrests at issue took place on September 26, 2009, at a house owned by Margaret Reeves but occupied by the Plaintiffs. Plaintiffs Carlson and Gandy are married, and Reeves is Gandy's mother. In the preceding month, there had apparently been another incident which resulted in Reeves being charged with assault with injury/family violence, where Carlson was the alleged victim. There was also a protective order entered against Reeves, presumably requiring that she have no contact with Carlson. The assault charge was still pending on September 26, 2009.

On that date, police went to the house after Carlson arrived home to find Reeves at the house and called 911. APD Officer Robert Cameron was dispatched to respond to the call and when he arrived, Carlson and Gandy were present, but Reeves had left. Carlson told Officer Cameron that her mother-in-law was at the house looking around suspiciously, and because Carlson had had "previous encounters" with Reeves she was scared and called her husband, who in turn told her to call the police. Gandy told Cameron that he had received a call from Carlson stating that Reeves was

at the house going through their belongings, and when he arrived at the house he saw Reeves walk

to her car and drive away.  Gandy stated that he saw two scratches on Reeves' arm that were

bleeding, but he did not know how she had injured her arm. Officer Cameron noted in his report that

Carlson and Gandy "were both very nervous and their stories sounded scripted.  Brenda at one point

started to act like she was going to faint but when told no one was going to jail she started to feel

better and did not pass out."

Cameron then went to another location to meet with Reeves.  She stated that she was at the

house because the house was hers, although she had to climb through the fence because Gandy had

changed the locks on the gate.  She stated that as she was walking through the house Gandy was

walking toward her in a hallway and they bumped into each other and Reeves fell down.  As she fell,

she stated that she felt a scratch on the back of her right arm.  Cameron's report notes that "Margaret

[Reeves] advised she did not believe Thomas [Gandy] bumped into her intentionally but it did cause

her to fall down."  Though Reeves was not sure how she received the scratches, she told Cameron

that she thought that Carlson may have scratched her with her nails.  She stated that she then locked

herself in her room and waited until she could not hear Carlson or Gandy, at which point she walked

to her car and left.

Cameron did not make any arrests on September 26.  His report states that "due to the

conflicting stories" he could not identify any suspect.  He noted further that the house had rough

stucco walls that could have caused the scratches to Reeves' arm when she fell, and that Reeves

stated she did not see what had scratched her and was not sure how she obtained the scratches.  No

other injuries were noted in the report.

Approximately two weeks later, on October 9, 2009, Carlson and Gandy were arrested for elder abuse, based on an affidavit presented by Det. Shaun Lapuszynski, who is assigned to an APD domestic violence response team.  Lapuszynski had received a call from Reeves on September 24, 2009, two days before the incident related above.  Reeves was calling  to ask if the emergency protective order had expired, and whether she could return to her residence.  Lapuszynski read the offense reports for that prior charge, and spoke to Reeves and concluded that  "Reeves is a 66 year old woman who the system has let down."  His report states that he went to the Assistant County Attorney assigned to the assault charge against Reeves, who in turn contacted her office and, after a review, the charges against Reeves were dismissed.

When Lapuszynski called Reeves on September 28 to inform her that the charges against her had been dismissed and that she was no longer governed by the protective order, she informed him of the incident on September 26.  According to Lapuszynski's report,

> Reeves detailed the fact that Gandy pushed her into a wall causing visible injury (bump and redness on upper right forehead) and complaint of physical pain.  Reeves further detailed the fact that she received scratches on the back of her arm from Carlson.  Reeves explained that Carlson was behind her and she did not see what she was scratched with, however, she felt being scratched along the back of the upper left arm.

Based on his previous work on the related charge, Lapuszynski asked that the case arising out of the September 26 incident be assigned to him, and he scheduled a meeting with Reeves the next day, September 29, 2009.  At that meeting, he obtained a sworn statement from Reeves.  On October 8, 2009, Lapuszynski presented an Affidavit for Warrant of Arrest and Detention, charging Gandy and Carlson with the third degree felony of Injury to Elderly.  There is no information in any of the

pleadings whether Lapuszynski did any additional investigation after taking Reeves' statement on

September 29 before presenting the Affidavit on October 8.  The facts alleged in the affidavit were:

> The affiant[']s belief in the following is based upon details contained in a sworn
> statement from and interview with the victim.  The victim explained that she is
> currently out of her home due to the suspects, Thomas Gandy and Brenda Carlson.
> The victim advised that she [sic] while she was retrieving clothing from her
> residence, Gandy pushed her against the wall in the hall.  The victim's face/head
> struck the wall which caused her glasses to fall off and break along with injuring her
> head.  The victim had a red bump on the upper right side of the forehead near the hair
> line.  As the victim attempted to pick up her glasses, the second suspect, Brenda
> Carlson, was standing behind her.  The victim explained that she felt a sctatch [sic]
> and then a second scratch along the back of the upper left arm.  The victim was not
> sure if the [sic] Carlson used something or did it with her fingernails, however, the
> scratches were deep and bleeding.

Based on this affidavit, the arrest warrants were issued by the Judge of Travis County Court of Law

Number 4 (Judge Mike Denton), and Gandy and Carlson were arrested on those warrants on October

9, 2009.  Approximately three months later—but not before Carlson and Gandy had been arrested,

bonded out, and hired counsel—the charges against them were dismissed for insufficient evidence.

In addition to alleging the specific facts leading to their arrest, the Plaintiffs also generally

allege that the City has "inadequate training and standard operation policies and there seems to be

a general lack of supervision." Clerk's Doc. No. 33 at 2–3.  They assert that Lapuszynski was either

inadequately trained or was improperly supervised.  They also assert that Lapuszynski was involved

in another recent case in which the charges were dismissed because he relied on statements by a

witness that turned out to be false.  *Id.* at 4; Clerk's Doc. No. 38 at 5–6.  From this, they assert that

the City's inadequate training and supervision supports holding the City liable for Lapuszynski's

actions.

C.      **Fourth Amendment Claim and Intervening Cause**

Fifth Circuit precedent recognizes a cause of action under the Fourth Amendment for an arrest made without probable cause. *Shields v. Twiss*, 389 F.3d 142, 150 (5th Cir. 2004). However, once facts supporting an arrest or indictment are placed before an independent intermediary, such as a magistrate or a grand jury, and that intermediary finds probable cause to support the charge, then the intermediary's decision breaks the chain of causation for these constitutional violations, insulating the initiating party. *Id.*; *Taylor v. Gregg*, 36 F.3d 453, 456 (5th Cir. 1994). Thus, to state a claim against Lupuszynski, the Plaintiffs must allege that "the deliberations of th[e] intermediary were in some way tainted by [Lapuszynski's] actions." *Taylor*, 36 F.3d at 457 (quoting *Hand v. Gary*, 838 F.2d 1420, 1427 (5th Cir. 1988)). And even alleging that Lapuszynski acted with malice or another bad motive will not be sufficient, as the Fifth Circuit has held that "an officer who acted with malice in procuring the warrant . . . will not be liable if the facts supporting the warrant or indictment are put before an impartial intermediary." *Hand*, 838 F.2d at 1427. The insulating effect of the intermediary will only take place, however, if "*all* the facts are presented to the grand jury or magistrate and the malicious motive of the officer does not lead him to withhold any relevant information." *Id.* at 1428 (emphasis added). But the affidavit need not be perfect; rather, only if "the affidavit, supplemented by the omissions, would not be sufficient to support a finding of probable cause" is a constitutional violation stated. *United States v. Brown*, 298 F.3d 392, 413 (5th Cir. 2002) (describing what is necessary for a defendant to show before he is entitled to a *Franks* hearing).

Carlson and Gandy allege that they have stated a claim against Lapuszynski because there are discrepancies between what was included in the arrest warrant affidavit and what is included in

Officer Cameron's police report. The Plaintiffs focus on two areas of difference: which of Reeves's arms was scratched, and whether Reeves received a bump on her head. In Cameron's report, he noted that it was Reeves's right arm which was injured, whereas Lapuszynski's report and warrant affidavit refer to it as her left arm. Further, there is no mention in any of Cameron's reports that Reeves had complained of a head injury; yet, the Plaintiffs argue, Lapuszynski's affidavit relies heavily on that injury.

Which arm was scratched is a trivial difference because it does not affect whether probable cause for an assault existed. The penal code only requires "physical pain, illness, or any impairment of physical condition." Tex. Penal Code § 1.07(a)(8). This covers a broad range of injuries, and relatively minor injuries like redness, swelling, or tenderness can suffice. *Elizardo v. Texas*, 2004 WL 639635 (Tex. App.—Dallas, Apr. 1, 2004) (unpublished). Regardless of which arm was injured, if the Plaintiffs caused Reeves's arm to bleed that was sufficient to support a charge under this statute.

The Plaintiffs' argument concerning the head injury raises a more substantial issue. Further, the documents Plaintiffs have included with their briefing—which the Court will treat as part of the pleadings for the reasons set forth earlier—demonstrate at least two other discrepancies of note between the initial report and the subsequent warrant affidavit. On the issue of the head injury, there are two points. First, as the Plaintiffs argue, there is no mention of such an injury in Officer Cameron's report. He did not note any such complaint from Reeves herself, nor did he record that he observed any such injury. Given that he was investigating a potential assault, it would be odd for him not to make note of such an observation if he made it, and it would be equally odd for Reeves not to mention the injury to the officer. Second, and perhaps more significantly, in Cameron's report

he recorded that Reeves told him that she "did not believe Thomas [Gandy] bumped into her intentionally but it did cause her to fall down." There is no mention of this in Lapuszynski's warrant affidavit. Given that the penal code requires that elder abuse be committed "intentionally, knowingly, recklessly, or with criminal negligence," Tex. Penal Code Ann. § 21.04, this omission was potentially material. The last discrepancy relates to the cause of the scratches. In Cameron's report he described Reeves as stating that she did not see what had scratched her and was not sure how she obtained the scratches, though he notes earlier in the report that Reeves "thought" that Carlson "may have" scratched her. The warrant affidavit, on the other hand, plainly attributes the scratches to Carlson, stating that "the victim was not sure if the [sic] Carlson used something or did it with her fingernails, however, the scratches were deep and bleeding."

From all of this, the Court concludes that the Plaintiffs have pled enough facts to state a Fourth Amendment claim against Det. Lapuszynski. Taking these allegations as true—as the Court must at this time—it does not appear that Det. Lapuszynski can be portrayed as having informed Judge Denton of *all* the relevant facts within his knowledge. Reeves' statement to Officer Cameron that she did not believe that Gandy had caused her to fall intentionally, but rather had bumped into her, was material, and if included in the affidavit may have defeated probable cause to support the charge against Gandy. Further, omitting that Reeves never complained to Officer Cameron that she had suffered a head injury and he did not observe one could also have affected Judge Denton's determination of probable cause regarding Gandy, as there is no other injury alleged to have occurred to Reeves as a result of the fall. Likewise, the warrant affidavit obscures the uncertainty that Reeves had regarding how she received the scratches on her arm, and omits her earlier—less certain—statements to Officer Cameron.

For these reasons, the Court concludes that Carlson and Gandy have each pled sufficiently to state a Fourth Amendment claim against Lapuszynski for false arrest.

### D.    Qualified Immunity

With regard to the claims against Lapuszynski in his individual capacity, he asserts that the Plaintiffs have failed to state a claim because they have not pled facts demonstrating that he is not entitled to qualified immunity.  The doctrine of qualified immunity affords state actors protection against liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Immunity in this sense means immunity from suit, not merely from liability. *Jackson v. City of Beaumont Police Dep't*, 958 F.2d 616, 618 n.3 (5th Cir. 1992).  "Qualified immunity is designed to shield from civil liability all but the plainly incompetent or those who violate the law." *Brady v. Fort Bend Cnty.*, 58 F.3d 173, 174 (5th Cir. 1995).  Because the immunity is an immunity from suit, courts treat it as a threshold question that should be decided "at the earliest possible stage in the litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

To rebut the qualified immunity defense, a plaintiff must show: (1) he has alleged a violation of a clearly established constitutional right; and (2)  the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident. *Waltman v. Payne*, 535 F.3d 342, 346 (5th Cir. 2008).  To negate a defense of qualified immunity and avoid summary judgment, the plaintiff need not present "absolute proof," but must offer more than "mere allegations." *Reese v. Anderson*, 926 F.2d 494, 499 (5th Cir. 1991).  In the context of a motion to dismiss, a plaintiff must state facts in the complaint which, if proven, would overcome the qualified immunity defense. *Babb v. Dorman*, 33 F.3d 472, 476 (5th Cir. 1994).

There is little question on the first issue.  It has been clearly established for some time that the Fourth Amendment protects people from an arrest without probable cause.  *E.g. Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007).  As for the second prong, the Plaintiffs must demonstrate that Lapuszynski's conduct in preparing the arrest warrant affidavit was objectively unreasonable. The Court believes that the Plaintiffs have met this pleading standard.  An objectively reasonable police officer would not omit material and potentially exculpatory facts from an affidavit.  *See Hale v. Fish*, 899 F.2d 390 (5th Cir. 1990) (denying qualified immunity where affidavit submitted to the magistrate contained material misstatements and omission of exculpatory evidence of such character that no reasonable officer would have submitted it).  The Plaintiffs have pled sufficient facts to defeat qualified immunity.  Lapuszynski's motion to dismiss on this ground should therefore be denied.

### E.     City Liability

In *Monell v. Department of Social Services*, the Supreme Court held that a governmental entity can be found liable under § 1983 only if the entity itself causes the constitutional violation at issue.  436 U.S. 658, 690–91 (1978).  Respondeat superior or vicarious liability is not a basis for recovery under § 1983. *See Collins v. City of Harker Heights*, 503 U.S. 115, 122–23 (1992); *Monell*, 436 U.S. at 691–94.  Thus, to recover a judgment against a local governmental entity under § 1983, a plaintiff must establish that he sustained a deprivation of a constitutional right as a result of some official policy, practice, or custom of that governmental entity. *See Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403–04 (1997); *Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 225 (5th Cir. 1999). It is only when the execution of the government's policy or custom inflicts the injury that the

governmental entity may be held liable under § 1983.  *Brown*, 520 U.S. at 403; *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215–16 (5th Cir. 1998).

An official policy is most commonly defined as a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy making authority.  *See Baltazor v. Holmes*, 162 F.3d 368, 377 (5th Cir. 1998).  A municipal policy must be a "deliberate and conscious choice" by a municipal policymaker.  *City of Canton v. Harris*, 489 U.S. 378, 389 (1989); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986).  An official "custom" or "practice" is most commonly defined as "[a] persistent, widespread practice of municipal officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom which fairly represents municipal policy.  Actual or constructive knowledge of such custom or practice must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy making authority."  *Nobby Lobby, Inc. v. City of Dallas*, 970 F.2d 82, 92 (5th Cir. 1992).

A municipality may be held liable under § 1983 for failing to adopt a policy when that failure rises to the level of "deliberate indifference" to the need for such a policy.  Under this test, a governmental entity can be held liable if, in the light of the duties assigned to specific officers or employees, the need for such a policy is so obvious, and the absence of such a policy so likely to result in violations of constitutional rights, that the governmental entity's policymakers can reasonably be said to have been "deliberately indifferent" to the need for the policy.  *Harris*, 489 U.S. at 389; *Colle*, 981 F.2d at 245–46.  Mere negligence by policymakers in the face of unconstitutional behavior by municipal employees is insufficient to establish municipal liability

under § 1983. *See Collins*, 916 F.2d at 286; *Doe*, 153 F.3d at 217.  Furthermore, the municipality

must be the moving force behind the resulting constitutional violation.  *Brown*, 520 U.S. at 415; *Doe*,

153 F.3d at 215–16.

The Plaintiffs generally acknowledge this law in their response to the City's supplemental

briefing.  See Clerk's Doc. No. 38 at 2.  In order to attempt to plead facts to support a claim against

the City for the actions of Det. Lapuszynski, they argue that the City failed either to train or supervise

Lapuszynski, and, because of this, the City should be held liable for his actions.  There are well-

established principles applicable to such a claim.  To succeed, the Plaintiffs must show the training

procedures of the City's policymaker were inadequate, the municipality's policymaker was

deliberately indifferent in adopting the training policy, and the inadequate training policy directly

caused the Plaintiffs' injuries.  *Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir.1996).  In failure to train

cases, the plaintiff can prove the existence of a custom or policy of deliberate indifference to

individuals' rights in two ways.  First, he can show that a municipality deliberately or consciously

chose not to train its officers despite being on notice that its current training regimen had failed to

prevent tortious conduct by its officers. *See Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S.

397, 407–08 (1997).  Second, under the "single incident exception," a single violation of federal

rights may be sufficient to prove deliberate indifference. *See id.* at 409.  The single incident

exception requires proof of the possibility of recurring situations that present an obvious potential

for violation of constitutional rights and the need for additional or different police training.  *Id.*

However, the Fifth Circuit has stressed that a single incident is usually insufficient to demonstrate

deliberate indifference. *See Gabriel v. City of Plano*, 202 F.3d 741, 745 (5th Cir. 2000) ("We have

consistently rejected application of the single incident exception and have noted that 'proof of a

single violent incident ordinarily is insufficient to hold a municipality liable for inadequate training.'") (quoting *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998)). Rather, the "plaintiff must demonstrate 'at least a pattern of similar incidents in which the citizens were injured . . . to establish the official policy requisite to municipal liability under section 1983.'" *Snyder*, 142 F.3d at 798. Moreover, a showing of deliberate indifference requires the plaintiff to show "that the failure to train reflects a 'deliberate' or 'conscious' choice to endanger constitutional rights." *Id.* at 799.

The Plaintiffs do not plead any facts concerning Laupszynski's training or supervision. Rather, they identify sixteen attributes that they believe a detective should have, though they fail to identify the source of this list. They then contend that "Plaintiffs will show that [Lapuszynski] lacked the ability, knowledge and skill set to perform his duties," and that he "does not excel in his position but is mediocre at best and lacks the necessary skills to be in that type of position of power." Clerk's Doc. No. 38 at 4. This is not enough to support a claim against the City. What is lacking are any facts suggesting that the City improperly trained Lapuszynski, and the Plaintiffs' purely speculative assertions are insufficient. The Plaintiffs' pleadings, even reviewing them in the liberal manner the Court has done here, do not include sufficient factual allegations "to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. Accordingly, dismissal of these claims is appropriate.

## F.      Equal Protection

Although it is not their primary claim, the Plaintiffs also contend that the facts support an equal protection claim under the Fourteenth Amendment. For example, in their initial response to the motion to dismiss, the Plaintiffs state that they

> assert that Shawn Lapuszynski's actions violated the Plaintiff's 4th and 14th Amendment Rights.  In Plaintiff's Original Complaint Plaintiff's [sic] plead that Shawn Lapuszynski's actions created such violation.  Defendant did not provide "equal protection under the law" (14th Amendment) and as a result of that violation Plaintiffs were subjected to false arrest and imprisonment (4th Amendment).

Clerk's Doc. No. 22 at 1.  They elaborate slightly on this claim in their response to the supplemental motion to dismiss:

> Defense questions how Plaintiffs were treated differently.  Plaintiffs intend to show that Shawn Lupszynski has a history of abuse of power and making false allegations.  This can only be corroborated by additional disclosure into his arrest and investigation records, his training records, and his personnel evaluations.

Clerk's Doc. No. 33 at 3.  These allegations are not enough to state an equal protection claim.

The Fifth Circuit has "acknowledged that certain intentionally discriminatory policies, practices, and customs of law enforcement with regard to domestic assault and abuse cases may violate the Equal Protection Clause." *See Shipp v. McMahon*, 234 F.3d 907, 914 (5th Cir. 2000), *overruled in part on other grounds by, McClendon v. City of Columbia*, 305 F.3d 314, 328-29 (5th Cir. 2002) (en banc) (applying the principle announced in *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 n.3 (1989), that "a State may not . . . selectively deny its protective services to certain disfavored minorities without violating the Equal Protection Clause").  Of course, at its most fundamental level, what the Equal Protection Clause requires is the "similar treatment of persons in similar situations." *Arceneaux v. Treen*, 671 F.2d 128, 131 (5th Cir. 1982).  What is patently lacking in any of the Plaintiffs' pleadings is any assertion that they were treated differently than "other persons in similar situations."  In fact, their (conclusory) assertion in their supplemental response that Lapuszynski had a history of abuse of power actually disproves their claim, as it essentially asserts that he treated others in the same situation in the *same* manner he treated the

16

Plaintiffs.  Accordingly dismissal of the Plaintiffs' claim under the Equal Protection Clause is warranted.

### III.    Plaintiffs' Motion to Join Travis County and an Assistant County Attorney

In addition to filing this lawsuit, Carlson also brought claims in state court against the assistant county attorney (Ann Marie Sheeley) who dismissed the assault charge that had been brought against Reeves based on Carlson's complaint.[5]  On September 8, 2010, that case was dismissed with prejudice on the Plea to the Jurisdiction of Sheeley.  Carlson now seeks to join Sheeley and Travis County in this case, based on the same allegations she raised in the state court suit (*i.e.*, that Sheeley wrongly dismissed the charges against Reeves).  The Defendants oppose the motion.

There are at least two reasons why joinder should not be permitted.  First, the claims are barred by the dismissal with prejudice of the state court suit.  For res judicata, or claim preclusion, to apply, there must be (1) a prior final judgment on the merits by a court of competent jurisdiction, (2) identity of parties or those in privity with them, and (3) a second action based on the same claims that were raised or could have been raised in the first action. *Citizens Ins. Co. v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007).  The dismissal with prejudice is a final judgment.  And there is no question that the claims against Sheeley that Carlson seeks to bring in this case arose out of the same facts on which the state suit was based.  Further, to the extent the claim here is different than that brought in state court (*e.g.* if it is being brought under 42 U.S.C. § 1983), the claim could have been filed in the state court case.  State courts have concurrent jurisdiction over § 1983 claims, *Felder v.*

---

[5]*Brenda Carlson v. Ann Marie Sheeley, County Attorney*, Cause No. C-1-CV-10-001682, County Court at Law No. 2, Travis County, Texas.

*Casey*, 487 U.S. 131, 139 (1988), and thus the claim could have been brought in that case.  To the extent the claim Carlson asks to add here is the same as that pursued in state court, then there is no doubt that the claim actually was raised in the state suit.  In either event, it is precluded by the doctrine of res judicata.

Further, even if the claim was not barred, as a prosecutor, Sheeley would be entitled to absolute prosecutorial immunity, and the claim would fail on that basis.  Under the doctrine of prosecutorial immunity, a prosecutor is absolutely immune in a civil rights lawsuit for any action taken in connection with a judicial proceeding.  *See Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993); *Burns v. Reed*, 500 U.S. 478, 487–92 (1991); *Imbler v. Pachtman*, 424 U.S. 409, 427–31 (1976).  "Acts undertaken by the prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protection of absolute immunity."  *Boyd v. Biggers*, 31 F.3d 279, 285 (5th Cir. 1994) (quoting *Buckley*, 509 U.S. at 272).  Prosecutorial immunity applies to the prosecutor's actions in initiating the prosecution and in carrying the case through the judicial process.  *See Boyd*, 31 F.3d at 285; *Gipson v. Callahan*, 18 F. Supp. 2d 662, 666 (W.D. Tex. 1997).  Thus, a prosecutor is immune from civil rights liability for actions taken in connection with a judicial proceeding, even if taken maliciously.  *See Brummett v. Camble*, 946 F.2d 1178, 1181 (5th Cir. 1991); *Rykers v. Alford*, 832 F.2d 895, 897 (5th Cir. 1987).

Accordingly, given that any claim against Sheeley brought here would be futile, Plaintiffs' Motion to Join Sheeley should be DENIED.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (listing factors that justify courts denying plaintiffs leave to amend their complaints, including the "futility of amendment"); *United States ex. rel. Willard v. Humana Health Plan of Tex.*, 336 F.3d 375, 387

(5th Cir. 2003) (holding that "leave to amend properly may be denied when . . . when amendment would be futile") (citing *Foman*, 371 U.S. at 182).

## V.  RECOMMENDATION

For the reasons set forth above, the undersigned Magistrate Judge RECOMMENDS that the Defendants' Rule 12(b)(6) Motion to Dismiss (Clerk's Doc. No. 21), and  Supplemental Rule 12 Motion to Dismiss (Clerk's Doc. No. 32) be GRANTED IN PART and DENIED IN PART.  The Court recommends that all § 1983 claims against the City of Austin be dismissed for failure to state a claim, that the state law claims against both Defendants be dismissed without prejudice based on the Plaintiffs' stated desire to abandon those claims, and that the Equal Protection Clause claim against Det. Lapuszynski be dismissed for failure to state a claim.  The Court recommends that as to the wrongful arrest claim under the Fourth Amendment against Det. Lapuszynski, the motion be DENIED.

The undersigned FURTHER RECOMMENDS that the Plaintiffs' Motion for Joinder of Additional Defendant (Clerk's Doc. No. 24) be DENIED.

## VI. OBJECTIONS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections. *Battles v. U. S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within 14 days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations

in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150–153 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 22nd day of November, 2010.

 

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE