IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| BRENDA J. CARLSON | § | |
| THOMAS R. GANDY | § | |
| | § | |
| V. | § | A-10-CA-130-AWA |
| | § | |
| DET. SHAWN LAPUSZYNSKI | § | |

## ORDER

Before the Court are: Defendant's Motion for Summary Judgment (Clerk's Doc. No. 71); Plaintiffs' Motion for Court Intervention and Removal of Affidavits (Clerk's Doc. No. 73); Defendant's Response in Opposition to the Plaintiffs' Motion (Clerk's Doc. No. 74); Defendants' Motion Re-urging Motion for Summary Judgment (Clerk's Doc. No. 75); Plaintiff's Response to Defendants Motion for Summary Judgement (Clerk's Doc. No. 78); and Defendant's Reply to Plaintiffs' Response to Defendant's Motion for Summary Judgment (Clerk's Doc. No. 79).[1]

**I.      Introduction**

The Plaintiffs, Brenda Carlson and Thomas Gandy, were arrested for elder abuse stemming from an incident with Gandy's mother, Margaret Reeves. The charges against the Plaintiffs were later dropped, and they filed suit raising numerous claims against the City of Austin and Detective Shawn Lapuszynski. All of the claims except the Plaintiffs' 42 U.S.C. § 1983 claim against Detective Lapuszynski were earlier dismissed (Clerk's Doc. No. 45). Defendant Lapuszynski now

---

[1]The Plaintiffs did not timely file a traditional response to the Defendant's Motion for Summary Judgment. The Plaintiffs' Response was filed on May 26, 2011 (Clerk's Doc. No. 78), a month after the deadline passed. It does not differ substantively from the motion for court intervention. Rather, Plaintiffs again asked the Court to strike statements contained in the Defendant's motion and reiterated their contentions that Lapuszynski failed to properly investigate the incident. Despite its tardiness, the Court has considered the Response in ruling on the Motion for Summary Judgment.

requests summary judgment on the sole remaining claim. He argues that the actions of a Travis County judge approving the arrest warrants, and a grand jury returning an indictment against the Plaintiffs, break the chain of causation between Lapuszynski's actions and the arrest of the Plaintiffs. He also contends that he is entitled to qualified immunity.

## II.     Legal Standard

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence demonstrating a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343

2

(5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id*. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, then summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

## III. Factual Background

### A. Preliminary matters

Before providing the factual scenario for this case, the Court will briefly address several of the Plaintiffs' recurring complaints regarding what they contend are inaccurate depictions of the facts by the Defendant. The most recent places these complaint occur are in their motion for court intervention and their response to Lapuszynski's motion for summary judgment. As will be seen, these complaints are not issues the Court must resolve to address the issues before it. Lapuszynski has raised two arguments for summary judgment, both of which rely on a fairly discreet universe of facts. Indeed, the primary argument—that the actions of third parties broke the chain of causation—relies on a very small body of evidence. The bottom line is that the many disagreements

the Plaintiffs have with Reeves or Lapuszynski regarding exactly what happened in the numerous encounters between the Plaintiffs and Reeves are simply not relevant to the issues the Court must decide.

Thus, for example, the Plaintiffs' complaint that Reeves erroneously alleged that they stole from her does not raise a fact issue material to the motion before the Court. Reeves's claim that the Plaintiffs stole from her was never a basis on which Lapuszynski sought out a complaint against the Plaintiffs, nor is it the basis of the indictment returned by the grand jury. While these facts might be disputed, they are not material. Likewise, Plaintiffs' belief that Reeves filed her complaint against them as a last-ditch effort to remove them from her home is immaterial as well. Reeve's subjective motivation in pursuing a charge against the Plaintiffs is irrelevant: what matters is whether the facts the detective presented to the judge were accurate and amounted to probable cause. In other words, it is Lapuszynski's actions, not Reeves's motives, that matter.[2] Similarly, even the Plaintiffs' dispute regarding what happened on September 26, 2009—the date of the incident alleged in the complaint and indictment—does not raise a material issue. Although a bit counter-intuitive, the Court need not determine the truth of what happened that day to address the summary judgment motion. This is because Lapuszynski's liability does not hinge on whether he correctly determined what happened at Reeves's house on the day in question. Rather, it depends on whether the information Lapuszynski presented to the judge was complete and not misleading, whether that information was sufficient to amount to probable cause, and whether he acted as a reasonable officer would have acted in the same situation and with the same facts. As a result, while the Court notes that there are

---

[2]Moreover, it is uncontroverted that the Plaintiffs were staying in Reeves's home without any legal right to do so. If Reeves wanted them out of her house, she could have accomplished that in a myriad of ways far simpler than swearing out an elder abuse complaint against them.

strong disagreements concerning many of the underlying facts, unless those facts are material to the issues before the Court, the disagreements are insufficient to prevent the entry of summary judgment.

B. **The material, undisputed facts**

The Plaintiffs lived in Reeves's home for several years without a formal legal arrangement. Their relationship deteriorated in 2009, and the Plaintiffs and Reeves had numerous arguments. During one of these, in August of 2009, the police were called and Carlson alleged that Reeves had assaulted her by closing the front door on Carlson's back. While it was Reeves who initially called the police, the officers ultimately arrested Reeves. Further, Carlson obtained an Emergency Protective Order (EPO) requiring that Reeves stay away from Carlson. Carlson thereafter made several complaints to APD that Reeves had violated the EPO by being present in Reeves's own home.[3] On September 26, 2009, Reeves returned to her home and had yet another altercation with the Plaintiffs. There are four recorded 911 phone calls relating to this altercation, as well as reports from the responding officers. Although no one was arrested at that date, Lapuszynski later investigated the events of the September 26, 2009 incident and presented a complaint and warrant to a county court at law judge charging Carlson and Gandy with elder abuse, and they were arrested on those charges on October 9, 2009. The district attorney presented the charges to a grand jury on November 17, 2009, and the grand jury returned an indictment against Carlson and Gandy charging each of them with elder abuse. Finally, on January 8, 2010, the district attorney dismissed the charges, stating that there was "insufficient evidence" for the charges. All of these facts are undisputed.

---

[3]Ironically, in responding to one of these calls, APD arrested Carlson when it was discovered that she had an outstanding warrant for a hot check charge.

As noted earlier, the Court's focus in this motion is not on attempting to sort out precisely what happened at Reeves's home on September 26, 2009, but rather the focus is on what information Lapuszynski gathered in his investigation into those events, and whether he accurately presented the material aspects of that information to the judge in his affidavit for arrest. With that in mind, what follows are the undisputed facts, construed in the light most favorable to Carlson and Gandy, regarding that investigation.

Lapuszynski's first involvement in these matters appears to have occurred on September 1, 2009, when he returned a phone inquiry to APD's Family Violence Protection Unit (where Lapuszynski worked), from Carlson or Gandy asking whether the EPO against Reeves was still in force. No one answered his call, and Lapuszynski left a message (which was never returned). Next, on September 24, 2009, Lapuszynski noted a computer entry at the FVPU that Reeves had called inquiring into the status of the EPO. He recognized the names from his previous call, but otherwise took no action. Then, on the Monday following the September 26, 2009 events, Lapuszynski noted that over the weekend there had been four 911 calls from Reeves's house. He thus called Reeves in response to her inquiry about the EPO, and to ask her about the 911 calls. From that call, he learned from Reeves that she felt she had been assaulted by Gandy and Carlson on the 26th. She claimed that Gandy and Carlson had fabricated the assault charge against her in August. She told Lapuszynski that Carlson and Gandy were "squatters" in her home and she had tried to have them evicted in August 2009. Before the eviction could take place, an altercation occurred on August 21, 2009. While Reeves felt threatened and called 911, when police responded they ultimately arrested Reeves because, in Reeves's view, "it was two against one" and no one believed her.

6

Based on this call, Lapuszynski investigated further. He was able to corroborate Reeves's statements based on several pieces of evidence:

- a written notice of eviction dated August 17, 2009;

- calls to APD from Reeves that same date of her fear of injury from Carlson and Gandy;

- another call by Reeves to APD on August 19, 2009 , regarding threats from Carlson and Gandy;

- an August 21, 2009 Original Petition for Forcible Detainer filed by Reeves; and

- the 911 calls on August 21, 2009 (one by Reeves, followed shortly by one from Gandy claiming that Reeves assaulted Carlson).

He then looked at police involvements regarding all three parties. The only involvement he found for Reeves was that on August 21, 2009, when she was arrested. He found several for Carlson and Gandy. Two were reports by Carlson claiming that Gandy had assaulted her in 2006 and 2008, and a report of Carlson being arrested on an outstanding hot check warrant in 2009. Gandy had numerous warrants for traffic violations, harassment, theft, credit card abuse, and a 2006 arrest for assaulting Carlson. Lapuszynski then reviewed the offense reports of the August 21, 2009 altercation, the reports of the officers who responded to Carlson's complaints that Reeves had violated the EPO, and the report of the September 26, 2009 altercation.

To gain a more complete picture of the incidents on August 21st and September 26th, Lapuszynski then listened to the recordings of the 911 phone calls. Lapuszynski stated that he placed more emphasis on the 911 phone calls than on other information because they were made in close proximity to the events and they offer first-hand accounts of what happened, while the police reports were conveyed through a reporting officer. Lapuszynski concluded that Reeves's 911 calls were

7

credible, and that she appeared to sincerely be in fear when she made her calls.[4] On the other hand, he found Carlson and Gandy's statements on the 911 calls to be insincere and contrived.[5] Based on this investigation, as well as on Lapuszynski's nine years of experience in the family violence unit (four years as a detective), and his eleven years of experience as a police officer, he concluded that it appeared that Reeves had been victimized by Carlson and Gandy.

Lapuszynski then took two actions. First, he presented the results of his investigation to the assistant county attorney assigned to the assault case against Reeves. That attorney reviewed the case with her supervisor, and decided to dismiss the case against Reeves.[6] Second, Lapuszynski contacted Reeves and, though Reeves was reluctant to do so, convinced her to come to APD to give a statement regarding the events of September 26, 2009. Reeves went to APD's offices on September 29, 2009, provided a statement to Lapuszynski, and also met with the Unit's Victim Services Counselor. Lapuszynski states that he did not interview Gandy and Carlson "because Mrs. Reeves stated she was in fear for her life," and that he too was concerned for her safety. Lapuszynski states that "it is common practice in the Unit that suspects are not contacted so as not to further endanger the victim. Officers are trained to use their discretion, particularly with suspects and victim from the same household."

---

[4]Lapuszynski describes Reeves's calls as "very credible, crying, shaky, scared, and heartbreaking."

[5]For example, Lapuszynski states that Carlson and Gandy were "neither fearful nor upset" when they called, and that they made such "complaints" as Reeves was "going through their stuff," that Reeves was bleeding and they wanted it "noted" they "hadn't touched her;" and Carlson could be heard laughing that Reeves was bleeding.

[6]The dismissal of this case is not the subject of this lawsuit. The Plaintiffs filed a separate (state court) suit against the prosecutor in that case.

From all of the above, Lapuszynski concluded that he had probable cause to believe that Carlson and Gandy had caused injury to Reeves on September 26, 2009. Because Reeves was 66 years old at that time, he concluded that there was probable cause to support a charge of Injury to Elderly, a 3rd Degree Felony in violation of Tex. Penal Code § 22.04(a)(3). He thus prepared an Affidavit for Warrant of Arrest and Detention as to both Carlson and Gandy. The full text of that affidavit (all typing in original) was:

> I have good reason to believe and do believe that GANDY, THOMAS REEVES, W/M, 02-27-1964.
>
> On or About The 26TH Day of SEPTEMBER, 2009, In the incorporated limits of the City of Austin, County of Travis and the State of Texas, did then and there commit the offense of:
>
>     INJURY TO ELDERLY (Family Violence): 3rd Degree Felony
>
> My belief of the foregoing statement is based upon information provided to me by MARGARET ANN REEVES. (victim)
>
> It was reported that on the 26TH day of SEPTEMBER, 2009, at approximately 3:02PM, an assault was committed against (Victim) MARGARET ANN REEVES by (Defendant) THOMAS REEVES GANDY.
>
> The incident is reported to have occurred at the following location in the City of Austin, Travis County, Texas:11407 HORNSBY STREET. (defendant's AND victim's residence)
>
> Describe the assault in detail: THE AFFIANTS BELIEF IN THE FOLLOWING IS BASED UPON DETAILS CONTAINED IN A SWORN STATEMENT FROM AND INTERVIEW WITH THE VICTIM. THE VICTIM EXPLAINED THAT SHE IS CURRENTLY OUT OF HER HOME DUE TO THE SUSPECTS, THOMAS GANDY AND BRENDA CARLSON. THE VICTIM ADVISED THAT SHE WHILE SHE WAS RETRIEVING CLOTHING FROM HER RESIDENCE, GANDY PUSHED HER AGAINST THE WALL IN THE HALL. THE VICTIM'S FACE/HEAD STRUCK THE WALL WHICH CAUSED HER GLASSES TO FALL OFF AND BREAK ALONG WITH INJURING HER HEAD. THE VICTIM HAD A RED BUMP ON THE UPPER RIGHT SIDE OF THE FOREHEAD NEAR THE HAIR LINE. AS THE VICTIM ATTEMPTED TO PICK UP HER GLASSES,THE

SECOND SUSPECT, BRENDA CARLSON, WAS STANDING BEHIND HER. THE VICTIM EXPLAINED THAT SHE FELT A SCTATCH AND THEN A SECOND SCRATCH ALONG THE BACK OF THE UPPER LEFT ARM. THE VICTIM WAS NOT SURE IF THE CARLSON USED SOMETHING OR DID IT WITH HER FINGERNAILS, HOWEVER, THE SCRATCHES WERE DEEP AND BLEEDING.

The injury sustained by the victim is described as:

- RED BUMP ON RIGHT SIDE OF FOREHEAD NEAR HAIR LINE.
- COMPLAINT OF PHYSICAL PAIN.

This offense does involve Family Violence as the victim and suspect are related by: MOTHER/SON AND MEMBERS OF SAME HOUSEHOLD.

Motion for Summary Judgment (Clerk's Doc. No. 71), Exh. 19.[7] On October 8, 2009, Judge Mike Denton of Travis County Court at Law No. 4 approved the complaints and issued warrants for Carlson and Gandy. They were arrested on October 9, 2009.

Little if any of these facts are disputed by Plaintiffs. One issue they raise is a claim that Reeves's attorney contacted Lapuszynski. However, Lapuszynski denied this allegation in his deposition, Deposition of Lapuszynski at ¶ 34, and the Plaintiffs have failed to offer any proof to contradict Reeves's and Lapuszynski's version of their communications.[8] They also take issue with Lapuszynski not taping his interview with Reeves, and are skeptical about the City's inability to produce electronic copies of the photographs taken of Reeves after the September 26, 2009 incident. Finally, they complain that Lapuszynski did not contact them for their version of the incident. None of these create fact disputes, however. Indeed, for purposes of this motion, the Court will accept as

---

[7]The Affidavit regarding Carlson is identical, except that the injury is stated to be "2 SCRATCHES ON BACK OF UPPER LEFT ARM" in place of the "bump on the forehead" noted in the Gandy Affidavit, and the family relationship is noted as "mother in-law/daughter in-law."

[8]Further, they fail to demonstrate why a communication between Reeves' attorney and Lapuszynski would be material.

true the claim that the City was unable to locate the electronic file for the photos of Reeves, and that Lapuszynski did not record his interview with Reeves. Further, as noted above, Lapuszynski concedes that he did not interview the Plaintiffs before seeking warrants for their arrest. As is discussed in what follows, none of these facts affect the outcome of the motion,

**IV.    The Plaintiffs' Initial Response**

In the first pleading they filed in response to the motion for summary judgment, the Plaintiffs objected to Lapuszynski's evidence and also requested additional time to file a response. *See* Request for Court Intervention and Removal of Affidavits (Clerk's Doc. No. 73).[9] In short, the Plaintiffs disagree with portions of the affidavit and deposition testimony of Reeves and Lapuszynski. They fail, however, to submit any contradictory evidence, despite having had ample time to obtain such evidence, and despite having taken multiple depositions. The Plaintiffs also complain that one of Lapuszynski's witnesses, Lisa Girouard, was buried in a list of witnesses, which prevented them from identifying her for a deposition. However, Lapuszynski disclosed her as a potential witness early in the litigation and again in a narrow list on March 4, 2011. Finally, the Plaintiffs request the Court to remove "materially false affidavits." But if the Plaintiffs dispute the facts set out in the affidavits, their remedy is to offer their countering evidence in a response. Therefore, the Court HEREBY DENIES the Plaintiffs' Request for Court Intervention and Removal of Affidavits (Clerk's Doc. No. 73).

**V.    Analysis**

   **A.    The Plaintiffs' Fourth Amendment Claims**

---

[9]On May 26, 2011, the Plaintiffs filed a substantive response to the motion, so the Plaintiffs' request in this pleading for additional time to file a response is moot. *See* Plaintiffs' Response to Defendant's Motion for Summary Judgment (Clerk's Doc. No. 78).

As noted in the introduction, the sole remaining claim in this case is the Plaintiffs' § 1983 claim against Lapuszynski for arresting them without probable cause in violation of the Fourth Amendment. Fifth Circuit precedent recognizes a cause of action under the Fourth Amendment for an arrest made without probable cause. *Shields v. Twiss*, 389 F.3d 142, 150 (5th Cir. 2004). However, once facts supporting an arrest or indictment are placed before an independent intermediary, such as a magistrate or a grand jury, and that intermediary finds probable cause to support the charge, the intermediary's decision breaks the chain of causation between the initiating party and the arrested person, insulating the initiating party from any constitutional liability. *Id.*; *Taylor v. Gregg*, 36 F.3d 453, 456 (5th Cir. 1994). As noted in the factual section, there were two intermediate decisions in this case: (1) the decision of Judge Denton approving the arrest warrants; and (2) the decision of the grand jury to return indictments against the Plaintiffs.

Thus, to maintain their claim against Lapuszynski, the Plaintiffs must demonstrate that the deliberations of these intermediaries were in some way tainted by Lapuszynski's actions. *Taylor*, 36 F.3d at 457 (quoting *Hand v. Gary*, 838 F.2d 1420, 1427 (5th Cir. 1988)). The insulating effect of the intermediary will only take place, if "*all* the facts are presented to the grand jury or magistrate and [any] malicious motive of the officer does not lead him to withhold any relevant information." *Id.* at 1428 (emphasis added). The affidavit need not be perfect; rather, only if "the affidavit, supplemented by the omissions, would not be sufficient to support a finding of probable cause" is a constitutional violation stated. *United States v. Brown*, 298 F.3d 392, 413 (5th Cir. 2002) (describing what is necessary for a defendant to show before he is entitled to a *Franks* hearing). The Plaintiffs must raise a fact issue as to lack of probable cause. *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010).

The Plaintiffs primary argument is that Lapuszynski submitted false information in, and omitted material information from, his affidavit supporting the arrest warrants, thereby tainting Judge Denton's decision finding probable cause. They fail to make any argument regarding how the grand jury's indictments were tainted by Lapuszynski, and the evidence demonstrates that Lapuszynski did not testify before the grand jury. Thus, it appears that the Plaintiffs fail to provide any substantive response to the argument that the grand jury's action halts any liability Lapuszynski might have.[10] This does not end the Court's analysis, however, as the indictments were returned on November 17, 2009, while the Plaintiffs' were arrested on October 8, 2009. Thus, Lapuszynski could still be liable for damages stemming from the arrests until the grand jury indicted the Plaintiffs. The focus is therefore squarely on the content of the arrest affidavits Lapuszynski submitted to Judge Denton.

Despite all of the arguments in their pleadings, Plaintiffs raise only one specific deficiency they contend exists within the arrest affidavits. Specifically, they argue that the evidence was conflicting regarding whether Reeves suffered a head injury, and the affidavit failed to include information material to this. The relevant language of the affidavit is:

> The victim advised that she while she was retrieving clothing from her residence, Gandy pushed her against the wall in the hall. The victim's face/head struck the wall which caused her glasses to fall off and break along with injuring her head. The victim had a red bump on the upper right side of the forehead near the hair line.

Plaintiffs point out that the original police report from September 26, 2009, is silent regarding any head injury–the officer made no note that he saw a bump on Reeves's head, nor did he record any

---

[10]They do offer that it is "well documented that the Grand Jury will indict a ham sandwich." Notwithstanding the belief that prosecutors have significant influence over whether a grand jury returns an indictment, the fact remains that grand jurors are sworn to act independently, and the long-standing law in this (and other) circuits states that a grand jury's decision to indict interrupts the chain of causation in a false arrest case.

complaint by Reeves that she had suffered a head injury. The undersigned noted these same issues when recommending that the motion to dismiss filed earlier in this case be denied.[11]

While these arguments were sufficient to defeat a motion to dismiss, they are not enough at this point in the case. As noted in the earlier Report and Recommendation, the Court was taking all of the Plaintiffs' allegations as true at that time, and further did not have any facts indicating the scope of Lapuszynski's investigation. *Id* at 6–7 ("There is no information in any of the pleadings whether Lapuszynski did any additional investigation after taking Reeves' statement in September 29 before presenting the Affidavit on October 8."). The summary judgment record now contains all of those facts, none of which are disputed. Thus, while it remains that the offense report failed to note a head injury, after that time Lapuszynski viewed a photograph of Reeves from the date, spoke directly to her, and took a sworn statement from her. In that statement Reeves says "as I started down the hall he [Gandy] came toward me and pushed me into the wall. My glasses came off and fell on to the floor. I hit my head on the wall had a [k]not and was red." Clerk's Doc. No. 71, Exh. 1. And even though the statement was written three days after the incident, Reeves stated that "I still have a headache."

Further, in his summary judgment affidavit Lapuszynski explains why he did not mention the offense report's silence regarding a head injury when he submitted his affidavit in support of the arrest warrants. First, Cameron's report is not inconsistent with Reeves's claim of suffering an injury, but instead is silent on the issue. Moreover, Lapuszynski had the benefit of time to perform a much more thorough investigation than Cameron. He listened to 911 calls, read all of the police reports, checked backgrounds, and interviewed Reeves. He also consulted Lisa Girouard after she

---

[11]*See* Report and Recommendation (Clerk's Doc. No. 39) at 9–10.

interviewed Reeves. All of the evidence available to Lapuszynski suggested that the Plaintiffs acted aggressively towards Reeves: Reeves 911 phone calls were more credible; her wounds were consistent with an assault; and the Plaintiffs had a history of aggressive behavior. Lapuszynski also explained that victims often change their stories, particularly when they are related to their aggressors. In short, what Lapuszynski found to be credible statements, given under oath, combined with photographic evidence, all pointing to a head injury, greatly outweighed the offense report's silence on the point. Given this, it is plain that Lapuszynski's affidavit was not tainted by a material omission regarding Reeves's head injury. Rather, it appears to have accurately summarized the information garnered from his investigation.

As mentioned earlier, the Plaintiffs do not point to any other aspect of the arrest affidavits they contend were either false, or materially misleading. Instead, they assert that some of the evidence Lapuszynski relied upon in his investigation was unreliable, or that Lapuszynski reached unfounded conclusions from that evidence. They also attack Reeves's credibility. But none of this goes to the point the Court must focus on—whether Lapuszynski included all of the material information he had gathered in the affidavits. As just noted, the Court finds that he did, and the Plaintiffs' arguments miss this point. Because the Court concludes that the arrest affidavits did not contain false information or material omissions, Judge Denton's finding of probable cause to support the arrests breaks the chain of causation between Lapuszynski's actions and the Plaintiffs' arrests, and summary judgment is appropriate.

### B. Qualified Immunity

Qualified immunity "shields Government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights." *Ashcroft v.*

*Iqbal*, --- U.S. ----, ----, 129 S. Ct. 1937, 1945 (2009). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly, and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 815 (2009). The Supreme Court has articulated a two-part test for resolving government actors' claims of qualified immunity: a court must determine both (1) whether the plaintiff has sufficiently alleged a violation of a constitutional right; and (2) whether that right was "clearly established" at the time of the actor's alleged misconduct. *Id.* at 815–16. With respect to the latter question, "a government actor is entitled to qualified immunity unless a reasonable official would have been on notice the conduct was unlawful." *Wernecke v. Garcia*, 591 F.3d 386, 393 (5th Cir. 2009). Although the Supreme Court once required these questions be answered in order, and doing so is still often advisable, courts have discretion to address either question first. *Id.* at 818. Finally, "[w]hen a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

Because "[t]he constitutional claim of false arrest requires a showing of no probable cause," *Club Retro L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009) (citation omitted), Lapuszynski is entitled to qualified immunity "if officers of reasonable competence could disagree" that he had probable cause to arrest the Plaintiffs. *See Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994) (citation and internal quotation marks omitted). The Supreme Court has defined probable cause as "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31,

37 (1979) (citations omitted). Furthermore, the Fifth Circuit has stated that probable cause "does not demand any showing that [the belief that an offense was committed] be correct or more likely true than false," because "the probable cause analysis only requires that we find a basis for an officer to believe to a 'fair probability' that a violation occurred." *Piazza v. Mayne*, 217 F.3d 239, 246 (5th Cir. 2000) (citations omitted) (alteration in original).

The elements of elder abuse are (1) intentionally, knowingly, recklessly or criminally negligently, (2) causing an elderly (over 65) individual, (3) bodily injury. TEX. PENAL CODE § 22.04(a)(3). The penal code defines "bodily injury" as "physical pain, illness, or any impairment of physical condition." TEX. PENAL CODE § 1.07(a)(8). This covers a broad range of injuries, and relatively minor injuries like redness, swelling, or tenderness are sufficient. *Elizardo v. Texas*, 2004 WL 639635 (Tex. App.—Dallas, Apr. 1, 2004) (unpublished). Therefore, if reasonable officers could disagree that Lapuszynski had probable cause to believe Gandy and Carlson had intentionally, knowingly or recklessly caused Reeves physical pain, then Lapuszynski is entitled to qualified immunity in submitting the affidavit for the arrest warrants and causing the Plaintiffs to be arrested.

The Plaintiffs provide several arguments for denying qualified immunity to Lapuszynski: (1) he focused on Reeves's version of events, whom they contend frequently lies, without consulting them; (2) he violated procedure by not taking notes or recording his interview with Reeves; and (3) he based probable cause on a head injury that Ofc. Cameron did not put in his report, and a photo that the Plaintiffs contend is insufficient. However, as discussed in detail above, Lapuszynski provided valid reasons for each of these decisions. He did not consult with the Plaintiffs out of concern that they would seek retribution against Reeves; he did not record the interview with Reeves because the recording equipment was broken; and he found the evidence of a head injury credible.

More importantly, Lapuszynski submitted a detailed report of an expert in support of the qualified immunity argument, which stands uncontested. The expert—Albert Rodriguez—is recently retired from the Texas Department of Public Safety, where he acted as Commander of the Training Academy for 16 years. He has been a law enforcement officer for 33 years. After a detailed analysis of the evidence in this case, and all of Det. Lapuszynski's actions,[12] Mr. Rodriguez concludes that:

> In my professional opinion, based on the information provided by Ms. Reeves, any reasonable and well-trained law enforcement officer could have believed as did Detective Lapuszynski that probable cause existed for the arrest of Gandy and Ms, Carlson. Detective Lapuszynski reasonably believed that probable cause existed to present a probable cause affidavit to Judge Denton.

Clerk's Doc. No. 71, Exh. 20 at ¶ 73. This evidence is undisputed, and the Plaintiffs offer no admissible evidence that a reasonable officer would have acted differently than Lapuszynski did. Plainly, therefore, Lapuszynski has demonstrated, at a minimum, that reasonable officers could disagree that probable cause existed for the Plaintiffs' arrest. Probable cause does not require the officer to prove the crime by a preponderance of the evidence—only a "fair probability" that it occurred. *Piazza*, 217 F.3d at 246. Lapuszynski is therefore entitled to qualified immunity.

## VI. Conclusion

For the reasons set forth above, the Court GRANTS Lapuszynski's Motion for Summary Judgment (Clerk's Doc. No. 71), and dismisses the Plaintiffs' remaining claim in this case with prejudice.

---

[12] Mr. Rodriguez's report is 24 pages long, and contains 80 numbered paragraphs. Clerk's Doc. No. 71, Exh. 20.

SIGNED this 9 day of June, 2011.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE